# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JEFFREY DELANE BENSON,**

        **Plaintiff,**

        **v.**                                  **Case No. 16-CV-1589**

**NANCY BOWENS, ET AL.,**

        **Defendants.**

## SCREENING ORDER

Plaintiff Jeffrey Delane Benson is a Wisconsin state prisoner representing himself. He filed a complaint alleging that the defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution, and that some of the defendants were negligent in violation of Wisconsin state law. This matter comes before the court on Benson's petition to proceed without prepayment of the filing fee (*in forma pauperis*).

Benson has been assessed and paid an initial partial filing fee of $6.42. On the same day the court received Benson's initial partial filing fee he filed a motion for a court order to pay the initial partial filing fee from his release account. (ECF No. 10.) Because Benson already submitted the initial partial filing fee, the court will deny this motion as moot.

Standard of Review for Screening Complaint

The court shall screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To state a cognizable claim under the federal notice pleading system, Benson is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Benson need not plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers mere "labels and conclusions" or a

"formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts should follow the principles set forth in *Twombly* by, first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. *Id.* If there are well-pleaded factual allegations, the court must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, Benson must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give Benson's *pro se* allegations, "however

3

inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Complaint's Allegations

Benson is incarcerated at the Oshkosh Correctional Institution ("Oshkosh"). He is suing Nurse Practitioner Nancy Bowens, Health Services Supervisor Danielle Foster, Institution Complaint Examiner Theresa Murphy, J. Zanon, Warden Judy P. Smith, Dr. P. Murphy, Captain Tess, Health Care Unit Assistant J. Barker, Jane Doe, and John Doe.

Benson alleges that he has diabetes which causes him to have issues with his feet. On June 13, 2014, pursuant to a referral from defendant Bowens, Benson had an appointment at the University of Wisconsin Hospital and Clinics ("UW Hospital") for an evaluation of his feet. At the hospital Benson was diagnosed with "diabetes mellitus with neuropathy" and "pes planus with foot pain." (ECF No. 1 at 6.) Dr. Migon, the UW Hospital practitioner who assessed Benson, recommended that he get "a pair of extra-depth diabetic type of shoes" and a customized orthotic to decrease his foot pain within the arch and instep area. (*Id.*)

After his appointment Benson submitted several "medical slips" because he was in pain and had not yet been seen by medical staff at Oshkosh for follow-up from his UW Hospital appointment. On August 11, 2014, about eight weeks after the UW Hospital appointment, defendant Bowens saw Benson at which time Benson informed her that the medication he had been taking was not working. Benson also asked Bowens about the shoes and orthotics that Dr. Migon had recommended. Bowens increased Benson's pain medication but did not do anything about the shoes and orthotics.

Benson submitted medical slips on August 20, 2014, October 3, 2014, November 2, 2014, December 3, 2014, and December 16, 2014. His medical slips included information that he was in pain, one advised that he was finding it difficult to walk, and he questioned why Oshkosh had not followed Dr. Migon's recommendation for treatment for his feet. Two of his medical slips were directed to Dr. Murphy.

On December 22, 2014, Benson was sent back to the UW Hospital, and from there he was sent to Aljan in Madison, Wisconsin, where Dr. Burke made molds of his feet for orthotics. (According to their website, The Aljan Company is an independent provider of orthotic, prosthetic, and pedorthic services. See www.aljan.com, last visited January 23, 2017.) Even though Dr. Migon had recommended that Benson wear extra-depth shoes, defendant Captain Tess was notified that Benson simply needed larger state-issued shoes to accommodate the orthotics.

Benson submitted additional medical slips on December 26, 2014, December 29, 2014, and January 12, 2015, informing Dr. Murphy and Ms. Baker that, per Dr. Migon at UW Hospital, he wasn't supposed to use state-issued shoes because they caused problems to his feet and aggravated his diabetes. On January 14, 2015, Benson received a memo from Bowens stating, "extra-depth shoes should come from property." (ECF No. 1 at. 8.)

In February 2015, Benson was sent back to Aljan to pick up his orthotics. In addition, a photo was sent to Oshkosh to let staff there know what kind of shoes to get for Benson.

On March 3, 2015, Oshkosh's special needs department determined that Benson did not meet the criteria for "alternative footwear." (*Id.*) Benson was directed to contact Captain

5

Tess if he needed a special shoe size. On March 5, 2015, Benson told Captain Tess that both Dr. Migon at UW Hospital and Dr. Burke at Aljan told him that he had special needs for his shoes, but Tess stated that "no one tells him what kind of shoes to give plaintiff[.]" (*Id.*)

On March 8, 2015, Benson submitted a medical slip begging Bowens for help because he had no feeling in his feet and pain in his back, and nothing was being done about it. On March 15, 2015, Benson received new medication but the medication did not work, which he advised the Health Services Unit via a medical slip on March 17, 2015.

On May 6, 2015, Benson was issued another pair of state-issued black Velcro shoes, which was the type of shoe that Dr. Burke at Aljan said he should not wear.

Benson submitted more medical slips on May 8, 2015, July 8, 2015, July 12, 2015, August 14, 2015, September 9, 2015, and September 30, 2015, requesting the treatment that Dr. Migon and Dr. Burke had recommended. He also stated that he had lost feeling in his feet, that he was experiencing great pain in his back and feet, and that the medication he took wasn't working.

On November 16, 2015, Benson received boots that defendant Barker had ordered, but the boots were too small for his orthotics despite Benson having previously told Barker what size to order.

Benson submitted more medical slips on November 18, 2015, November 26, 2015, December 29, 2015, January 6, 2016, and January 7, 2016, advising that he was in pain and his medication was not working. In the January 7 medical slip Benson asked about getting his orthotics cut to fit his boots, as "this is a (2) year problem now." (*Id.* at 11.)

On January 19, 2016, an off-site service request and report to refit Benson's orthotics to his boots was submitted. Benson subsequently submitted more requests for help, including a February 22, 2016, medical slip to Warden Smith, a letter to Wisconsin Department of Corrections Secretary Edward Wall, and a letter to Wisconsin Senator Lena Taylor.

On May 31, 2016, Benson was approved for alternative state footwear. Based on the complaint's allegations, it appears that as of September 2016 he had not received this footwear.

Benson claims that all of the defendants violated his rights under the Eighth Amendment by ignoring his requests for help to be seen by a doctor to prevent further damage to his back and feet and by delaying getting Benson the treatment he needed. Benson also claims that the refusal of defendants Bowens, Murphy, Foster, and Barker to treat his feet and back condition for two years constituted negligence and medical malpractice under Wisconsin state law.

For relief Benson seeks a preliminary injunction (addressed below), a permanent injunction, and monetary damages.

Discussion

Benson may proceed on his claims under the Eighth Amendment against all defendants based on his allegations that he has a serious medical need and that the defendants failed to follow Dr. Migon's and Dr. Burke's recommendations for treatment of his condition, resulting in ongoing pain. *See Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir.

7

2016) (refusal to follow instructions from specialist and persistence in an ineffective course of treatment may indicate deliberate indifference). This claim includes Benson's allegations that the defendants delayed treating his condition. *See id.* at 730 (inexplicable delay in treatment may support an inference of deliberate indifference). Benson may also proceed against the defendants who processed the grievances he filed about the alleged lack of medical care because the condition was ongoing and included complaints of untreated pain as the result of not receiving treatment that medical professionals at the UW Hospital and Aljan recommended. *See Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015).

Benson also may proceed on his state law negligence/medical malpractice claim against defendants Bowens, Murphy, Foster, and Barker. *See Wade v. Castillo*, 658 F. Supp. 2d 906, 919 (W.D. Wis. 2009). The court will exercise supplemental jurisdiction over the state law claim. *See* 28 U.S.C. § 1367(a).

Benson claims that the defendants "conspired" to violate his rights. However, all of the defendants work at Oshkosh and are state actors. Under the intracorporate-conspiracy doctrine, a conspiracy cannot exist solely between members of the same entity. *See Beese v. Todd*, 35 Fed. Appx. 241, 243 (7th Cir. 2002); *Payton v. Rush-Presbyterian*, 184 F.3d 623, 632 (7th Cir. 1999). Therefore, Benson may not proceed on a claim that the defendants conspired to violate his rights.

Lastly, Benson names as defendants Jane Doe and John Doe, but he does not include any allegations against either defendant. The court will therefore dismiss the Doe defendants. If Benson identifies other defendants involved in the allegations giving rise to

his claim, he may file a motion to amend the complaint along with a proposed amended complaint.

## Request for Preliminary Injunction

In the complaint Benson seeks a preliminary injunction ordering the defendants to follow the orders from the podiatrist (presumably, UW Hospital) and Aljan, to stop putting his medical issue on hold, and to give him medications that will help him with the pain and discomfort. As far as the court can tell, Benson has not received the treatment that specialists recommended beginning in June 2014 and as a result he claims that he suffers from severe pain. The court will direct the defendants to file a response to Benson's request for a preliminary injunction on or before February 17, 2017.

## Motion to Appoint Counsel

Benson has filed a motion to appoint counsel. He states that his imprisonment will unfairly limit his ability to litigate, the issues in this case are complex and will require significant research, and that the prison law library is ill-equipped to provide him the materials he needs to research and investigate his case. Benson states that once the court certifies his claim he will attempt to find an attorney on his own and then will submit documentation of his attempts.

In a civil case the court has discretion to decide whether to recruit a lawyer for someone who cannot afford one. *Navejar v. Iyola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C § 1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013). First, however, the person has to make a reasonable effort to hire private counsel on their own.

*Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007). After the plaintiff makes that reasonable attempt to hire counsel, the court then must decide "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (citing *Pruitt*, 503 F.3d at 655). To decide that, the court looks not only at the plaintiff's ability to try his case but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." *Id.*

Benson has not yet satisfied the first requirement for recruitment of *pro bono* counsel, that is, that he has made a reasonable effort to find an attorney on his own. He understandably wants to wait until the court "certifies" his claim before trying to find an attorney. Because Benson has not taken this initial step, the court will deny without prejudice his motion for *pro bono* counsel. Benson may submit another motion once he has contacted at least three attorneys in an attempt to find counsel on his own.

## ORDER

**IT IS THEREFORE ORDERED** that Benson's motion for leave to proceed without prepayment of the filing fee (*in forma pauperis*) (ECF No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that the defendants respond to Benson's request for preliminary injunction (ECF No. 1 at 14) by **February 17, 2017**.

**IT IS FURTHER ORDERED** that Benson's motion to appoint counsel (ECF No. 4) is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Benson's motion for an order allowing him to pay his $6.42 partial filing fee out of his release account (ECF No. 10) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that defendants Jane Doe and John Doe are **DISMISSED**.

**IT IS FURTHER ORDERED** that, pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of Benson's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on the state defendants.

**IT IS ALSO ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, the defendants shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from Benson's prison trust account the $343.58 balance of the filing fee by collecting monthly payments from Benson's prison trust account in an amount equal to 20% of the preceding month's income credited to his trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS ALSO ORDERED** that a copy of this order be sent to the Warden of Oshkosh Correctional Institution, 1730 W. Snell Road, P.O. Box 3310, Oshkosh, Wisconsin, 54903-3310..

**IT IS FURTHER ORDERED** that Benson shall submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter. As each filing will be electronically scanned and entered on the docket upon receipt by the clerk, Benson need not mail copies to the defendants. The defendant will be served electronically through the court's electronic case filing system. Benson should also retain a personal copy of each document filed with the court.

Benson is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin this 23rd day of January, 2017.

WILLIAM E. DUFFIN
U.S. Magistrate Judge