UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JEFFREY DELANE BENSON,

    Plaintiff,

v.                                                                 Case No. 16-C-1589

NANCY BOWENS, et al.,

    Defendants.

---

## DECISION AND ORDER

---

Plaintiff Jeffrey Benson, proceeding *pro se*, filed this action under 42 U.S.C. § 1983, alleging that defendants Nancy Bowens, Danielle Foster, Theresa Murphy, James Zanon, Judy Smith, Dr. Patrick Murphy, Captain Tom Tess, and Jamie Barker were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment and that defendants Bowens, Murphy, Foster, and Barker were negligent in violation of Wisconsin state law. Currently before the court is the defendants' motion for summary judgment. For the following reasons, the defendants' motion will be granted and the case will be dismissed.

## BACKGROUND

At all times relevant to this action, Plaintiff Jeffrey Benson was housed at Oshkosh Correctional Institution. Defs.' Proposed Findings of Fact (DPFOF) ¶ 1, ECF No. 45. Benson alleges a history of foot pain related to his diabetes. On June 13, 2014, Benson went to a University of Wisconsin clinic to be evaluated by a podiatrist. *Id.* ¶ 3. During the evaluation, the podiatrist noted Benson's diabetic foot pain was controlled in the past with appropriate Nike shoes. *Id.* ¶ 5. The podiatrist recommended that Benson wear "extra-depth diabetic type" shoes, such as a New

Balance extra-depth shoe, with bilateral customized orthotics devices. *Id.* ¶ 4. She also suggested that he be allowed to wear personal shoes on a more regular basis. *Id.* ¶ 5. On June 17, 2014, three days after his appointment with the podiatrist, Benson received a new pair of Nike brand personal shoes. *Id.* ¶ 7.

After reviewing the podiatrist's recommendation, Benson's primary care provider at the institution, Nurse Practitioner Bowens, referred Benson to an orthotics company to create bilateral custom orthotics devices. *Id.* ¶ 8. Because the Department of Corrections has no control over the availability of outside provider appointments, Benson was fitted for orthotics and ultimately received them in December 2014. *Id.* ¶ 10. The specialist who provided the orthotics noted that Benson would need larger shoes to accommodate the orthotics and recommended three kinds of shoes, including a New Balance running shoe, that could accommodate the inserts. *Id.* ¶ 11.

Some time after receiving the orthotics, Benson asked Health Services Unit staff if he would receive a pair of New Balance shoes. Nurse Practitioner Bowens referred his request to the Special Needs Committee to determine whether Benson had a special need or restriction that requires special or alternative footwear. The Committee is comprised of medical staff, security staff, and other staff and is responsible for deciding whether an inmate has a need or restriction that requires an accommodation. *Id.* ¶¶ 12–13. In March 2015, the Special Needs Committee denied Benson's request for alternative footwear but advised Benson to contact Captain Tess to order new state-issued shoes in a different size. *Id.* ¶ 17–18. Benson met with Captain Tess, who measured Benson's feet and ordered state-issued wide Velco shoes with removable insoles that added depth and better accommodated the orthotics. *Id.* ¶ 19. Prior to receiving these state-issued shoes, Benson received a pair of Adidas personal shoes in April 2015. *Id.* ¶ 22. Benson ultimately received

2

the Velcro state-issued shoes in May 2015. *Id.* Benson complained about the poor fit of the Velcro shoes, and as a result, Benson received a pair of extra-wide state-issued boots to accommodate his shoe needs in November 2015. *Id.* ¶¶ 23–24.

Benson returned to the orthotic specialist on January 19, 2016. The specialist modified his orthotics to fit his new state-issued boots. The specialist noted his concern about the size of Benson's boots based on the bunions Benson had developed on his feet. *Id.* ¶ 25. After reviewing the specialist's notes, Nurse Practitioner Bowens made another appointment for Benson with the specialist so that he could receive replacement shoes and properly fitting orthotics. On May 24, 2016, the specialist indicated that the orthotics fit well and that he did not have the required authorization to provide footwear to inmates. *Id.* ¶ 26. Nurse Practitioner Bowens then referred Benson's shoe need to the Special Needs Committee for a second time. The Committee approved Benson's request on May 31, 2016. *Id.* ¶ 27.

Unfortunately, Benson's new alternative footwear was not actually ordered for Benson after the Committee issued its decision. *Id.* ¶ 28. This oversight related to the retirement of Captain Tess, the individual responsible for ordering inmate shoes. *Id.* ¶ 30. In any event, Benson has now received the New Balance shoes, originally recommended by the podiatrist, that accommodate his orthotics. *Id.* ¶ 32.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for

summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

**ANALYSIS**

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. It imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to ensure that inmates receive adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison official's "deliberate indifference" to a prisoner's medical needs or to a substantial risk of serious harm violates the Eighth Amendment. *Id.* at 828; *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). This does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment. An inmate's claim for deliberate indifference must establish "(1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012).

The defendants argue that Benson has not established that he has a serious medical condition. What constitutes a sufficiently "serious medical need" under the first prong is "far from self-defining." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). A condition may be sufficiently serious where failure to treat the condition could "result in further significant injury or the

4

unnecessary and wanton infliction of pain" or where the injury is one that "a reasonable doctor or patient would find important and worthy of comment or treatment." *Id.* "It is clear that the Supreme Court contemplated that medical conditions far less critical than 'life threatening' would be encompassed by the term." *Id.* Seventh Circuit cases "demonstrate a broad range of medical conditions may be sufficient to meet the objective prong of a deliberate indifference claim, including a dislocated finger, a hernia, arthritis, heartburn and vomiting, a broken wrist, and minor burns sustained from lying in vomit." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (quoting *Roe v. Elyea*, 631 F.3d 843, 861 (7th Cir. 2011)). The question is far less clear when the inmate has a chronic condition, like diabetes or degenerative disc disease, that causes continuing problems that cannot be fully cured but only be controlled. Benson's history with foot problems related to his diabetes suggests that his pain constitutes a serious medical condition.

Even if the court assumes Benson has a serious condition, Benson must demonstrate that the defendants were deliberately indifferent to that condition. Deliberate indifference requires more than negligence or even gross negligence; it requires that officials know of, yet disregard, an excessive risk to an inmate's health or safety. *Farmer*, 511 U.S. at 835, 837; *see also Estelle*, 429 U.S. at 104. It is not enough to show that prison officials merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995). "A state officer is deliberately indifferent when he does nothing . . . or when he takes action that is so ineffectual under the circumstances that deliberate indifference can be inferred." *Figgs v. Dawson*, 829 F.3d 895, 903 (7th Cir. 2016) (internal citations omitted).

Benson maintains that the defendants failed to fill the written prescription for certain footwear recommended by the orthotic specialist. Pl.'s Resp. Br. at 1, ECF No. 64. Medical staff are not required to defer to the opinions or recommendations of another care provider, however.

5

An inmate's acting primary care doctor "is free to make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards." *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). In addition, the Eighth Amendment does not require that prison staff comply with the treatment preferences of a prisoner. *See Ciarpaglini v. Saini*, 352 F.3d 328 (7th Cir. 2003).

The record shows that the defendants went to great efforts to treat Bensen's diabetes and accommodate Benson's foot condition. Decl. of Danielle Foster, ECF No. 22, Ex. 1000. Benson received numerous accommodations regarding his footwear including bilateral custom orthotics devices, personal Nike shoes, state-issued Velcro shoes, and state-issued boots. He ultimately received a second set of accommodating state-issued footwear, namely New Balance running shoes, after the Special Needs Committee approved his request for the footwear. Admittedly, Benson received the shoes after he filed this lawsuit apparently because Captain Tess inadvertently failed to order the shoes prior to his retirement. But the delay in securing the shoes does not rise to the level of deliberate indifference. *See Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) ("[D]eliberate indifference is simply a synonym for intentional or reckless conduct, and that 'reckless' describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred."). Benson complains that Captain Tess told him that "no one tells him (Tess) what to do or what shoes to order . . . ." Pl.'s Resp. to DPFOF ¶ 19, ECF No. 65. But that was before the Special Needs Committee approved his request for New Balance shoes. Once the Committee authorized the New Balance shoes, Benson offers no evidence that Tess deliberately delayed ordering them. In fact, Tess states in his affidavit that he simply does not recall whether he placed the order before his retirement

6

or told his successor about it. He states "any failure to do so on my part was inadvertent and not intentional in any way." Decl. of Tom Tess ¶ 11, ECF No. 43. At best, Benson's evidence suggests only that Captain Tess forgot to submit the order for his shoes, not that Captain Tess deliberately failed to take certain actions despite subjective knowledge that Benson had foot pain. Captain Tess' actions amount to nothing more than negligence, which does not constitute deliberate indifference. *See McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) ("[N]egligence, even gross negligence, does not violate the Constitution." (citation omitted)).

Moreover, Benson has not established that the remaining defendants were personally involved in the claimed deprivations. A defendant may be personally liable only "if the conduct causing the constitutional deprivation occurs at [his] discretion or with [his] knowledge and consent. That is, he must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003) (alteration in original) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Benson offers no evidence that these defendants were involved in processing Benson's order for New Balance shoes or the eventual delay in his receiving them. Absent any involvement by these defendants in the delay, they cannot be held liable under § 1983. Because Benson has failed to demonstrate that he has evidence of either involvement or knowledge on the part of these defendants, his claims against them will be dismissed.

Even if these defendants were aware that Benson had not received the New Balance shoes, Benson has not presented any medical evidence that the delay between his complaints of pain and his receipt of alternative shoes detrimentally affected, unnecessarily prolonged, or exacerbated his pain. *See Williams v. Liefer*, 491 F.3d 710, 714–15 (7th Cir. 2007) ("In cases where prison officials delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer

7

'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm." (citing cases)). In other words, a plaintiff must provide "medical evidence that tends to confirm or corroborate a claim that the delay was detrimental." *Id.* Benson has not done so here. He does claim that he had continued pain while he was awaiting his new shoes. But he offers no evidence as to what difference his new shoes have made. Remember, his condition is chronic. In other words, the pain can be alleviated somewhat, and perhaps the change in footwear had such an affect. Benson offers no evidence, however, that he experienced any improvement whatsoever. Absent such evidence, there is no basis upon which a jury could find that the delay in providing the new footwear caused any injury.

Benson's frustration with the prison bureaucracy is understandable. Patients who deal with other bureaucracies, such as the Veterans Administration and other government health insurance programs, experience similar frustrations. But bureaucratic inefficiency is not the same as deliberate indifference. Absent evidence that the delay was due to something more than efforts to try reasonable alternatives and then inadvertence, a jury cannot find in Benson's favor. He cannot meet his burden of establishing that the defendants were deliberately indifferent to his medical needs.

Benson has also alleged state law claims against Bowens, Murphy, Foster, and Barker. Generally, when federal claims drop out of a case, federal courts decline to exercise supplemental jurisdiction over state law claims. 28 U.S.C. § 1367(c)(3); *see Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."). The Seventh Circuit has described a "sensible presumption that if the federal claims drop out *before trial*, the district court should relinquish jurisdiction over the state-law claims."

*Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007); *see also Groce v. Eli Lilly & Co.*, 193 F.3d 496, 502 (7th Cir. 1999) (noting that the rule is dismissal unless state claims are frivolous or a "no brainer"). Nothing in this case suggests that the presumption should be ignored. Accordingly, Benson's claims will be dismissed without prejudice so that they may be pursued in a state forum.

## CONCLUSION

For the reasons set forth above, the defendants' motion for summary judgment (ECF No. 39) is **GRANTED** with respect to the federal claims, and such claims are dismissed. The remaining state law claims are dismissed without prejudice. The Clerk is directed to enter judgment accordingly.

Dated this   24th   day of January, 2018.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court